IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. YOUNG, *et al.*, | : | Case No. 1:16-cv-01126 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | **ORDER GRANTING DEFENDANTS'** |
| | | **MOTION TO DISMISS COUNTS TWO** |
| CINCINNATI EQUINE, LLC, *et al.*, | : | **AND FOUR OF THE COMPLAINT** |
| Defendants. | : | |

This matter, a civil action between a thoroughbred horse owner and a veterinarian, is before the Court on the Motion of Defendants to Dismiss Counts Two and Four of the Complaint for Failure to State a Claim. (Doc. 10.) Plaintiffs have filed a memorandum in opposition, to which Defendants have replied. (Docs. 18, 20.) For the reasons that follow, Defendants' Motion will be GRANTED.

I.    BACKGROUND[1]

A.    The Parties and the Hamilton County Action

Plaintiff Thomas J. Young ("Young"), a resident of Naples, Florida, is engaged in the business of breeding and racing thoroughbred horses. (Complaint, Doc. 3 at PageID 4, 5 (¶¶ 1, 8, 9).) He owns these horses in his own name. (*Id.* at PageID 5 (¶ 10).) Through trainers, Young has conducted racing operations in both Kentucky and Ohio, specifically at Turfway Park in Florence and at River Downs—now known as Belterra Park—in Cincinnati. (*Id.* at PageID 5

---

[1] Defendants' Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6). For purposes of deciding it, therefore, the Court accepts as true the factual allegations made by Plaintiffs in their Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

(¶ 12).)  Young is a member and the registered agent of Plaintiff Sandringham Farm, LLC ("Sandringham") located in Georgetown, Kentucky.  (*Id.* at PageID 4 (¶¶ 1, 2).)

Defendant John A. Piehowicz, II ("Piehowicz"), a resident of Cincinnati, Ohio, is a veterinarian licensed to practice in Kentucky and Ohio.  (*Id.* at PageID 4, 6 (¶¶ 4, 16).)  He is a member and the registered agent for Defendant Cincinnati Equine, LLC ("Equine").  (*Id.* at PageID 6 (¶ 16).)  Equine's principal business is providing equine veterinary medical services at training facilities and racetracks, largely at Turfway Park.  (*Id.* at PageID 6 (¶¶ 17, 18).)  At various times during the period 2006 to January 2008, Equine, through Piehowicz, provided services to Young's horses that were stabled and in training at Turfway Park.  (*Id.* at PageID 7 ¶ 20).)  Young denies being physically present when these services were provided.  (*Id.* at PageID 7 (¶ 21).)  He also denies any communications with Equine or Piehowicz regarding the terms of these services or authorizing anyone to act on his behalf to make any agreement regarding the terms of these services.  (*Id.*)

Equine periodically invoiced Sandringham (and not Young) for these services at its address in Georgetown.  (*Id.* at PageID 7 (¶ 23).)  Young disputed some of the services provided and the charges therefor and ultimately declined to pay the last invoice submitted by Equine in 2008.  (*Id.* at PageID 8 (¶¶ 26–28).)  Equine filed suit against Sandringham in the Hamilton County, Ohio Municipal Court in the matter captioned *Cincinnati Equine, LLC v. Sandringham Farm, LLC*, Case No. 08CV15831 (the "Hamilton County Action").  (*Id.* at PageID 8 (¶ 29); Doc. 3-1 at PageID 19–24.)  The complaint in the Hamilton County Action relies upon an invoice that is not dated, but refers to services purportedly provided through February 25, 2008.  (Doc. 3 at PageID 8 (¶ 30); Doc. 3-1 at PageID 24.)  The total amount due on the invoice is $2,142.45, which includes two "service charges" of $15.64 and $25.00.  (Doc. 3-1 at PageID 24.)

Although he owned the horses that received veterinary services, Young was not named a party to the Hamilton County Action. (Doc. 3 at PageID 9 (¶ 33); Doc. 3-1 at PageID 21.) In his status as a member of Sandringham, Young nonetheless tendered a *pro se* response to Equine's complaint in the Hamilton County Action, in which he denied the existence of any agreement between Equine and Sandringham regarding veterinary services as alleged. (Doc. 3 at PageID 9 (¶¶ 36, 37); Doc. 3-2 at PageID 26–28.) He also denied that the services were provided in Ohio as alleged. (Doc. 3 at PageID 9 (¶ 37).)

At an early stage in the Hamilton County Action, Young tendered to Equine, through its counsel, a check drawn on a Sandringham account that was made payable to "Jackass Piehowicz" in the amount of $2,101.81. (Doc. 3 at PageID 9 (¶ 39) and Doc. 3-3 at PageID 38.) This amount paid in full the charges for veterinary services but did not include the two "service charges." (Doc. 3 at PageID 9 (¶ 39).) Neither Equine nor Piehowicz negotiated the check. (*Id.* at PageID 9 (¶ 40).)

Eventually Equine filed motions both for default judgment[2] and summary judgment. (*Id.* at PageID 9 (¶ 41).) Young again tendered a *pro se* response of behalf of Sandringham, raising issues of personal jurisdiction. (*Id.* at PageID 10 (¶ 42); Doc. 3-3 at PageID 30–38.) Equine's motion for summary judgment nevertheless was granted on October 20, 2008. (Doc. 3 at PageID 10 (¶ 44); Doc. 3-4 at PageID 40.) Equine then naturalized the judgment in Bourbon County, Kentucky in February 2009 and filed a judicial lien against the real property comprising Sandringham Farm on March 27, 2009. (Doc. 3 at PageID 10 (¶ 45); Doc. 3-6 at PageID 42–45.) Equine also attempted to garnish Sandringham bank accounts in Ohio to satisfy the judgment. (Doc. 3 at PageID 10 (¶ 45).) Equine took no further actions to attempt to collect the judgment

---

[2] The motion for default judgment was denied by the trial court without explanation, as was noted by the Hamilton County, Ohio Court of Appeals in a later proceeding, discussed *infra*. (*Cincinnati Equine, LLC v. Sandringham Farm, LLC*, No. C-150067 (Ohio Ct. App. 1st Dist., Mar. 4, 2016), Doc. 3-7 at PageID 55 (¶ 3).)

against Sandringham until August 2014, more than five years after these initial efforts.  (*Id.* at PageID 10 (¶ 47).)

**B.      The Racing Commission Complaint and the Hamilton County Action Appeal**

On August 4, 2014 Equine and Piehowicz filed a "Financial Responsibility" complaint against Young with the Ohio State Racing Commission ("OSRC").  (*Id.* at PageID 10 (¶ 48); Doc. 3-6 at PageID 47–52.)  They enclosed the judgment from the Hamilton County Action as well as the lien against Sandringham Farm.  (Doc. 3-6 at PageID 47–52.)  Young, through counsel, requested a dismissal on jurisdictional grounds.  (Doc. 3 at PageID 11 (¶ 54).)  Young also, again through counsel, filed a motion to vacate the 2008 judgment in the Hamilton County Municipal Court.  (*Id.* at PageID 11 (¶ 55).)  He argued that the Ohio court lacked personal jurisdiction over Sandringham and, in any event, Sandringham was not the proper party defendant.  (*Id.*)

Following a hearing held in January 2015, the Hamilton County Municipal Court denied Young's motion.  (*Id.* at PageID 11 (¶ 56).)  He appealed.  (*Id.* at PageID 12 (¶ 57).)  On March 4, 2016, the Hamilton County, Ohio Court of Appeals reversed and remanded the cause to the trial court "to conduct an evidentiary hearing of the issue of whether the exercise of personal jurisdiction over Sandringham Farm is consistent with Ohio's long-arm statute and due process." (*Cincinnati Equine, LLC v. Sandringham Farm, LLC*, No. C-150067 (Ohio Ct. App. 1st Dist., Mar. 4, 2016) (the "Hamilton County Action Appeal")), Doc. 3-7 at PageID 54, 60 (¶ 19).) Thereafter Equine and Piehowicz withdrew their complaint lodged with the OSRC and that proceeding was dismissed on April 6, 2016.  (Doc. 3 at PageID 12 (¶¶ 60, 61); Doc. 3-8 at PageID 62–64.)  Equine then dismissed the Hamilton County Action on April 13, 2016 and released the lien against Sandringham Farm.  (Doc. 3 at PageID 12 (¶¶ 62, 63).)

4

### C.    Procedural History

Young and Sandringham Farm filed a four-count Complaint in this civil action on

December 6, 2016.  They allege "abuse of process" claims against Equine regarding the

Hamilton County Action (Count One) and against Equine and Piehowicz regarding the OSRC

proceeding (Count Three).  They also allege "wrongful use of civil proceedings," or malicious

prosecution, claims against Equine regarding the Hamilton County Action (Count Two) and

against Equine and Piehowicz regarding the OSRC proceeding (Count Four).  Equine and

Piehowicz have filed a Motion to Dismiss Counts Two and Four, the claims for malicious

prosecution.  This matter is fully briefed and ripe for review.[3]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To

withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a

formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  Courts do not require "heightened fact pleading of specifics, but only

enough facts to state a claim for relief that is **plausible** on its face."  *Id.* at 570 (emphasis added).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  A district court examining the sufficiency of a complaint

must accept the well-pleaded allegations of the complaint as true.  *Id.*; *DiGeronimo Aggregates,*

*LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

---

[3] Defendants also have filed a separate Motion to Dismiss Plaintiffs' Claims of Abuse of Process.  (Doc. 21.)  That Motion will be not be addressed until briefing is complete.

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

## III.    ANALYSIS

The four elements of the tort of malicious civil prosecution are:

1)  Malicious institution of prior proceedings by defendant against plaintiff;

2)  Lack of probable cause for the filing of the prior proceedings;

3)  Termination of the prior proceedings in plaintiff's favor; and

4)  Seizure of plaintiff's person or property during the course of the prior proceedings.

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A*., 68 Ohio St. 3d 294, 1994-Ohio-503, 626 N.E.2d 115, 117–18 (citing *Crawford v. Euclid Nat'l Bank*, 19 Ohio St. 3d 135, 483 N.E.2d 1168, 1171 (1985)). Equine and Piehowicz argue that Young and Sandringham cannot prove the third and fourth elements, requiring dismissal of Counts Two and Four. The Court agrees.

### A.  The Hamilton County Action

The record is clear that the Hamilton County Court of Appeals reversed the decision of the Hamilton County Municipal Court because it failed to conduct an evidentiary hearing on the

issue of personal jurisdiction before it denied Sandringham's motion to vacate the 2008

judgment:

> The record in this case contains contradictory evidence of who owned the horses
> that Cincinnati Equine treated, who contracted for that treatment, and how much
> of that treatment occurred in Ohio. As a result, we cannot determine if exercising
> personal jurisdiction over Sandringham Farm comports with Ohio's long-arm
> statute or whether there is specific jurisdiction over Sandringham Farm sufficient
> to satisfy due process.

(Hamilton County Action Appeal, Doc. 3-7 at PageID 59–60 (¶ 17).) However promising for

Sandringham, this ruling was not a decision on the merits. Rather, it was a mandate to the trial

court to establish *first* that it has jurisdiction over the defendant being sued *before* it proceeds to

resolve the actual dispute between the parties. *See Vitrano v. CWP Ltd. P'ship*, No. 19516, 1999

WL 1261151, at *4 (Ohio Ct. App. 9th Dist., Dec. 22, 1999). And *before* the Hamilton County

Municipal Court was able to hold a jurisdictional hearing, Equine exercised its right to

voluntarily dismiss its action pursuant to Ohio R. Civ. P. 41(A)(1)(a). Therefore, the Hamilton

County Action did *not* terminate in Sandringham's favor, a circumstance fatal to its claim for

malicious prosecution. *See Miller v. Unger,* 192 Ohio App. 3d 707, 2011-Ohio-990, 950 N.E.

2d, 241, 243 (¶ 16); *Starinki v. Pace*, 81 Ohio App. 3d 113, 610 N.E.2d 494, 495 (1991); *Elite

Designer Homes, Inc. v. Landmark Partners*, No. 22975, 2006 WL 2270832, at *9 (¶¶ 41, 44)

(Ohio Ct. App. 9th Dist. Aug. 9, 2006); *Graff v. Ohio Valley Truss Co.*, No. 05CA3, 2005 WL

3441252, at *3 (¶¶ 11–13) (Ohio Ct. App. 4th Dist. Dec. 12, 2005); *Bayer v. Neff*, 1995 WL

815345, at *4 (Ohio Ct. App. 11th Dist. Dec. 29, 1995), *rev'd on other grounds*, *Palivoda v.

Felix*, No. 2010–A–0017, 2011 WL 4790982, at *9 n.3 (Ohio Ct. App. 11th Dist. Oct. 7, 2011);

*Wilson v. Fifth Third Bank*, No. CA94-01-001, 1994 WL 250144, at *1 (Ohio Ct. App. 12th Dist.

June 13, 1994); *Summitville Tiles, Inc. v. Jackson*, No. 87-C-42, 1988 WL 122836, at *2-3 (Ohio

Ct. App. 7th Dist. Nov. 15, 1988);[4] *see also Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 676 (N.D. Ohio 2015).

Also fatal to Sandringham's claim is the fact that it cannot demonstrate that any of its property was seized by Equine. Equine admittedly obtained a judgment against Sandringham in the Hamilton County Action, and then naturalized that judgment and filed a lien in Kentucky. But Equine never collected against the lien, which it released once it dismissed the Hamilton County Action. No seizure ever occurred,[5] and seizure is an absolutely necessary element. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 662 N.E.2d 9, 14 (1996) ("We therefore retain in malicious civil prosecution cases the long-held and well-reasoned requirement of seizure of property, and leave to our Rules of Civil Procedure, or the General Assembly, the method with which to deal with meritless civil claims."); *see Hrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 904 (N.D. Ohio 2014). This element is indispensable, "as a matter of

---

[4] Two of the cases rely in part on *Frysinger v. Leech*, which held—in a medical malpractice action—that "[a] voluntary dismissal pursuant to [Ohio] Civ. R. [P.] 41(A)(1) constitutes a failure otherwise than upon the merits within the meaning of the savings statute, [Ohio Rev. Code §] 2305.11." 32 Ohio St. 3d 38, 512 N.E.2d 337, 338 (¶ 2) (1987). *Graff*, 2005 WL 3441252, at *3 (¶ 12); *Bayer*, 1995 WL 815345, at *4.

[5] The expense of time and money to defend against a lawsuit "do[es] not constitute a seizure of property for purposes of maintaining a malicious prosecution action." *Moss v. Blake*, No. 43799, 1982 WL 5198, at *3 (Ohio Ct. App. Mar. 4, 1982); *Hrivnak v.NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 904 (N.D. Ohio 2014) ("Neither damage to a person's credit, nor incurrence of defense costs constitutes seizure of property." (citations omitted)). Rather, "[p]roperty is seized when, for instance, the plaintiff is deprived of 'possession, use, or enjoyment' of the property[.]" *Clauder v. Holbrook*, No. C-990145, 2000 WL 98218, at *2 (Ohio Ct. App. 1st Dist. Jan. 28, 2000) (citations omitted). This standard is strictly applied:

> Similarly, we hold that the conduct of Holbrook in filing the land contract and instituting a lawsuit for specific performance of the land contract did not meet the requirement for seizure of the property. **Here, Clauder claims no more than that the suit made sale of the property infeasible. Such an allegation falls far short of the type of seizure required in Ohio courts to maintain a cause of action for malicious prosecution**. Clauder has not alleged interference with possession, use or enjoyment of the property that was the subject of the lawsuit, and none of his property has been subject to attachment, injunction or garnishment.

*Id.* (emphasis added). Hence, the Bourbon County lien against the real property comprising Sandringham Farm is palpably insufficient to constitute a seizure under Ohio law.

public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of such a requirement." *Crawford*, *supra*, 483 N.E.2d at 139.

Because Sandringham is unable to establish either the third or fourth elements of its malicious prosecution claim, the Court must dismiss Count Two.

### B.  The OSRC Complaint

It is undisputed that Equine and Piehowicz withdrew their "Financial Responsibility" complaint filed against Young on April 5, 2016, and, in turn, the OSRC closed the case the very next day.  No decision on the merits of the complaint ever was rendered.  While obviously beneficial to Young, the OSRC proceedings did not terminate in his favor.  Nor was any action taken by the OSRC against Young—such as suspending, revoking or otherwise restricting his horse racing license—in reaction to Equine and Piehowicz filing their complaint.  Thus, no property seizure occurred.  *See Moss v. Blake*, No. 43799, 1982 WL 5198, at *4 (Ohio Ct. App. Mar. 4, 1982).  Accordingly, like Sandringham, Young cannot establish either the third or fourth elements of his malicious prosecution claim, and the Court must dismiss Count Four as well.

## IV.    CONCLUSION

Based on the foregoing reasons, the Motion of Defendants to Dismiss Counts Two and Four of the Complaint for Failure to State a Claim (Doc. 10) is hereby **GRANTED**.

**IT IS SO ORDERED**.

DATED: May 16, 2017                          S/Susan J. Dlott                           
                                                                Judge Susan J. Dlott
                                                                United States District Court